DREW, Justice.
This direct appeal is from a decree validating $1,053,000 of elementary school bonds of the Board of Public Instruction of Okaloosa County.[1]
The issues raised relate only to the sufficiency of the published notice of bond election. Such notice contained the following language with reference to the place of voting in each of the designated precincts, viz:
“The places of voting in said election shall be the usual places of voting in said county at General Elections. * * * ”
Appellants, intervenors in the trial court, contend first that the trial court erred when it held that the election was held and conducted in substantial compliance with law, and second that the notice of election above referred to was insufficient and misleading because the voting in at least two precincts [2] was not done at the polling places described in the notice of said election but was held at different locations and polling places.
*508 The statute governing bond elections sets forth the requirements of the notice of election.[3] It provides that the governing body of the issuing authority:
“ * * * shall by resolution order an election to be held in the * * * district * * * and shall give at least thirty days’ notice of the election by publication in a newspaper published within the * * * district * * * The publication shall be made at least once each week for four consecutive weeks during the thirty days’ period. If no newspaper be published in the * * * district * * *, then the notice shall be posted in at least ten different places within the territorial limits of the * * * district * *
Such statute[4] also provides that the laws governing General Elections shall be applicable to bond elections and:
“ * * * The places for voting in bond elections are the same as the places for. voting in general elections, when the bond elections are held in the * * * district; * * * ”
The foregoing requirements concerning the location of the polling places are clearly directory — not mandatory. It is the duty of the election officials — both under the applicable law and inherently — to advise the electors of the places where they must appear in order to register their vote. But the violation of such provisions as those involved here cannot affect the validity of an election nor the result thereof where such election has been fairly held and there is no charge of fraud, corruption or coercion that is alleged to have affected the result thereof.[5] There is no such charge here.
 It may often be necessary, by virtue of fire or other disaster or the simple unavailability of a particular polling place, to change a location even after the publication of notice, even possibly on the very day of the election. Obviously such a necessary change should not affect the result of an otherwise valid election. Nor should the failure of officials to properly perform their duties be allowed to frustrate the actions of the electorate.[6]
The vote in the precincts which were in locations other than those designated in the notice shows conclusively [7] that few, if any, were misled.[8] In those precincts the vast majority of qualified voters participated, and of those participating the vast majority were in favor of the issuance of the bonds. Altogether the record here establishes that this election was conducted in substantial compliance with the law and that the result was a clear authorization for the issuance of such bonds.
The decree is affirmed.
THORNAL, C. J., and O’CONNELL, CALDWELL and ERVIN, JJ., concur.

. Sec. 4, Art. V, Florida Constitution, F.S.A., authorizes direct appeals to the Supreme Court from final decrees or judgments in. proceedings for the validation of bonds.

. Precincts # 18 and 19. In Precinct 18, 747 voted out of 1136 who were qualified; in Precinct 19 the vote was 758 out of a total of 1109. The total vote in favor was 3180, against 775.

. Sec. 100.211, Florida Statutes 1965, F.S.A.

. Section 100.221, Florida Statutes 1965, F.S.A.

. Willets v. North Bay Village, Fla.1952, 60 So.2d 922; 11 Fla.Juris. Elections, Sec. 123, page 450.

. Carn v. Moore, 1917, 74 Fla. 77, 76 So. 337.

. See footnote 2.

. The supervisor of registration testified that where there were changes made in any polling place or places she followed this procedure:
“Q Do you publish any notice in the paper that the polling places have been changed?
“A Xes, sir. In our legal ad the location is published and then I always see that there’s always notices in all the newspapers where it’s involved in plus radio if they are changed that they have been changed.
“Q How many times do you run the notices?
“A It has been run once.
“Q How many days before the election?
“A At least fourteen.”