LASKY, et ux v. STATE FARM INSURANCE CO., et al.

No. 72-1109.

Court of Record, Broward County.

September 11, 1972.

Norman S. Klein of Schwartz, Klein & Horland, North Miami Beach, for the plaintiffs.

Dieter K. Gunther of Carey, Dwyer, Austin, Cole & Selwood, Fort Lauderdale, for the defendants.

NELS R. PEARSON, Judge.

This cause came on for hearing on the defendant's motion to dismiss the plaintiffs' second amended complaint (" complaint" hereafter) and, after notice to all parties, the court heard argument from counsel.

Although the complaint does not specifically request declaratory relief, the allegations of that pleading and the statements by counsel make it clear that plaintiffs seek to test the constitutionality of certain sections of the "Florida Automobile Reparations Reform Act" chapter 71-252, Laws of Florida, commonly called the "Florida No Fault Insurance Law." Paragraph 7 of the complaint specifically asserts that §§627.737 and 627.738, Florida Statutes, are "invalid, unenforceable and unconstitutional." The plaintiffs base their attack on both the Florida Constitution (article I, §§2, 9, 21 and 22) and the United States Constitution (amendments VII and XIV).

Because the plaintiffs seek this declaration of unconstitutionality, all parties have agreed that the attorney general of Florida should be permitted to appear pursuant to Florida Statute 86.091. The attorney general has entered an appearance but has waived the right to oral argument on the defendants' motion to dismiss.

The court can take judicial notice of facts known to everyone and it is well known that the sections attacked by the plaintiffs are part of a statute which attempts to deal with the mounting costs of automobile insurance. §12 of the act deals with the problem of insurance rates and requires a 15% reduction in premiums. [1]

Because of the importance of this law on which millions of dollars of insurance contracts now depend, the court believes that plaintiffs' arguments should be examined in detail.

The first argument advanced by the plaintiffs is that there is a "constitutional right" to sue for personal injury and property damage and that this "right" requires the court to ignore the "No Fault Insurance Law" barrier against this action.

The plaintiffs' reliance on the "access to courts" provision of the Florida Constitution (article I, §21) is misplaced as is the reliance on the trial by jury (article I, §22), due process (article I, §9) and equal protection (article I, §2) provisions. [2] In their insistence

---

[1] In most respects, the theory and operation of the Florida law does not differ greatly from the law of Massachusetts, described in detail in Pinnick v. Cleary, 271 N.E. 2d 592 (Mass. 1971).

[2] The arguments pegged to Amendments VII and XIV of the United States Constitution parallel the plaintiffs' other arguments and may be considered with them.

that the common law right to sue cannot be modified by the legislature, the plaintiffs seek to turn these constitutional rights into guarantees that the law will forever remain static. As the United States Supreme Court said in a similar context, "[N]o person has a vested interest in any rule of law, entitling him to insist that it shall remain unchanged for his benefit." N.Y. Central R. Co. v. White, 243 U. S. 188, 198 (1917).

The implications of the plaintiffs' argument are vast — if there were such a constitutional doctrine, the legislature would not have the power to reform the law governing wrongful death (see chapter 72-35, Laws of Florida), provide for security deposits in stockholders derivative suits (Florida Statute 608.131), limit the award of punitive damages in libel suits (Florida Statute 770.02), or do any of a number of things that our policy making branch of government is clearly entitled to do.

The arguments of plaintiffs' counsel are not new for they are much like those advanced in the attack on the Florida guest statute, McMillan v. Nelson, 149 Fla. 334, 5 So.2d 867 (1942),[3.] the assault on the statute governing punitive damages in libel actions, Ross v. Gore, 48 So.2d 412 (Fla. 1950), and the attempt to invalidate the statute exempting cash surrender values of life insurance policies from garnishment, Slotcoff v. Dezen, 76 So.2d 792 (Fla. 1954). All of these challenges were unsuccessful.

A direct parallel to the statutes that plaintiffs challenge is the workmen's compensation laws. In the development of those laws, legislative bodies saw the evils of industrial accidents and changed the common law to provide for "no fault" recovery.[4.] There were constitutional challenges to the workmen's compensation laws on the basis of the fourteenth amendment to the constitution, but there is no doubt concerning the constitutionality of workmen's compensation laws. N. Y. Central R. Co. v. White, 243 U. S. 188 (1917); Arizona Employers' Liability Cases, 250 U.S. 400 (1919).

A reading of the above Supreme Court cases, dating from the second decade of this century, will reveal that the plaintiffs' arguments on due process and equal protection have been rejected for many years.

The plaintiffs advance a theory that the "threshold" of the statute is unconstitutional because it discriminates against them. In support

---

[3.] This statute was repealed by the 1972 legislature.

[4.] In the process, the common law concepts of fellow servant and contributory negligence were altered.

of this assertion they attach to their pleadings an exhibit which purports to show "cost trends" for "representative hospitals". The argument advanced is seriously flawed both technically and legally.

The "threshold" of the statute is not geared merely to "hospital and medical" costs as alleged by the plaintiffs. That threshold is phrased in these words —

Section 8. *Tort Exemption; limitation on right to damages.* — * * *

(2) In any action of tort brought against the owner, registrant, operator or occupant of a motor vehicle with respect to which security has been provided as required by this act, or against any person or organization legally responsible for his acts or omissions, a plaintiff may recover damages in tort for pain, suffering, mental anguish and inconvenience because of bodily injury, sickness or disease arising out of the ownership, maintenance, operation or use of such motor vehicle only in the event that the benefits which are payable for such injury *under paragraph (a) of subsection (1) of section 7* or which would be payable but for any exclusion or deductible authorized by this act exceed one thousand dollars, or the injury or disease consists in whole or in part of permanent disfigurement, a fracture to a weight-bearing bone, a compound, comminuted, displaced or compressed fracture, loss of a body member, permanent injury within reasonable medical probability, permanent loss of a bodily function, or death. Any person who is entitled to receive free medical and surgical benefits shall be deemed in compliance with the requirements of this subsection upon a showing that the medical treatment received has an equivalent value of at least one thousand dollars. Any person receiving ordinary and necessary services normally performed by a nurse from a relative or a member of his household shall be entitled to include the reasonable value of such services in meeting the requirements of this subsection. (Italics added.)

The reference to paragraph (a) of subsection 7 (1) is a reference to "reasonable expenses". Read in context, there is no question that this is a constitutional classification. The plaintiffs have not alleged and do not argue that the reasonable value of the medical services take them over the threshold. The act contemplates that this can be done and, indeed, the issue might be presented in a number of ways — if a litigant pays for exorbitant medical services in an attempt to exceed the threshold, the reasonableness of those charges could well become a factual issue under the act. Thus, the wealthy person cannot buy into the threshold because that would not be "reasonable" expense under the act. Similarly, a person who receives free services is not denied access to the threshold because of the express language of section 8, subsection 2, quoted above. However interesting those questions may be, they are factual and not constitutional and they are not raised in this case. It is sufficient to observe that the classification is a constitutional classification and no violence is done to the United States or Florida constitutions.

Counsel has called the court's attention to the opinion of the Illinois Supreme Court styled Grace v. Howlett, 283 N.E. 2d 474 (Ill. 1972).

This court has carefully studied that case and found that it is not helpful for several reasons. First, the Illinois law that was invalidated is not parallel to the Florida enactment and second, most grounds of the Illinois decision relate to provisions of the Illinois constitution for which Florida has no counterpart.

If this court needed guidance in these questions from other jurisdictions it would turn to Massachusetts rather than to Illinois since the Massachusetts statute is much closer to the Florida statute. Of course, the Massachusetts statute was upheld in Pinnick v. Cleary, 271 N.E. 2d 592 (Mass. 1971).

It should also be noted that the consequences of the relief plaintiffs seek would be catastrophic for the insurance buying public. The costs of insurance would necessarily go up if there were first party insurance coverage under the no fault contracts and all accidents could also produce claims under the old tort system.

In summary, the positions urged by the plaintiffs would foreclose the authority of the legislature to deal with the complex and important questions which are raised by rising insurance costs, crowded court calendars and public outrage over a tort system that does not compensate the victim in relation to the expense of the system. This court is not called on to pass upon the wisdom of the legislative solution, but to consider the power of the legislature to enact such a law. It is clear that the legislature has this power.

For the reasons expressed herein, the court finds that the complaint has no validity.

It is therefore ordered and adjudged that the complaint does not state a cause of action under Florida law since it is barred by chapter 71-252, Florida Statute 1971.

It is further ordered and adjudged that the law barring the action, that is, chapter 71-252 Florida Statutes 1971, is a constitutional exercise of legislative power.

It is further ordered and adjudged that the defendants' motion to dismiss is granted, and the plaintiffs' complaint is dismissed with prejudice.