The People of the State of New York, Respondent, *v.* Carter Gardner, Appellant.

Fourth Department, January 5, 1939.

*Doris M. Sims [Charles P. Williams* with her on the brief], for the appellant.

*Charles B. Brasser, District Attorney,* for the respondent.

LEWIS, J. Upon our review of a judgment convicting the derendant of criminal negligence under section 1053-a of the Penal Law, we meet first his challenge to the constitutionality of the statute upon the ground that the terms of its prohibition are too vague and indefinite for enforcement. The statute provides:

" § 1053-a. Criminal negligence in operation of vehicle resulting in death. A person who operates or drives any vehicle of any kind in a reckless or culpably negligent manner, whereby a human being is killed, is guilty of criminal negligence in the operation of a vehicle resulting in death."

It is settled law that the terms of a penal statute creating a new offense must be sufficiently explicit to define what conduct on the part of those subject to its terms will render them liable to its penalties. " A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." (*Connally* v. *General Construction Co.,* 269 U. S. 385, 391; *People* v. *Grogan,* 260 N. Y. 138, 145; *People* v. *O'Gorman,* 274 id. 284, 287.)

It is said that the statute in question insufficiently states a crime in that the clause " reckless or culpably negligent manner " is vague and is so lacking in definition that it fails adequately to specify the conduct which the Legislature intended to condemn.

As we have considered the appellant's criticism we have given heed to the rule that a statute is to be upheld as sufficiently certain where it employs words or phrases which have a well-settled meaning at common law — " notwithstanding an element of degree in the definition as to which estimates might differ." (*Connally* v. *General Construction Co.*, *supra*, p. 391. See, also, *Cline* v. *Frink Dairy Co.*, 274 U. S. 445, 463, 465.) We also have in mind the rule that the Legislature is presumed to have had knowledge of the prior judicial construction which has been put upon a term and to have used the term in accord with such construction when it is later employed in a statute which relates to the same general subject-matter. (*Pouch* v. *Prudential Ins. Co.*, 204 N. Y. 281, 287, 288; *Kent* v. *Jamestown Street R. Co.*, 205 id. 361, 366: *Sulkowski* v. *Szewczyk*, 255 App. Div. 103, 104.)

Applying these rules to the solution of our problem, we find that prior to the enactment of the statute here in question the meaning of the two phrases " reckless driving " and " culpable negligence " have been judicially defined in cases where they were employed to fix penal responsibility. It has been ruled that " Reckless driving * * * standing by itself means the running or operation of an automobile under such circumstances as to show a reckless disregard of the consequences." (*People* v. *Grogan, supra,* p. 144.) At an earlier date and after a careful study of the historical background afforded by the common law, the same court ruled that " ' Culpable ' negligence is therefore something more than the slight negligence necessary to support a civil action for damages. It means disregard of the consequences which may ensue from the act, and indifference to the rights of others. No clearer definition, applicable to the hundreds of varying circumstances that may arise, can be given." (*People* v. *Angelo*, 246 N. Y. 451, 457.) The two opinions last cited, with the wealth of authority which each collates, save from vagueness the statute which we are now construing. Each decision antedates the enactment of section 1053-a and accordingly, as we have seen, we are permitted to ascribe to the words " reckless " and " culpable negligence " the elements of " disregard of the consequences " and an " indifference to the rights of others " upon which the emphasis of judicial definition has been placed.

We, therefore, uphold the statute as sufficiently explicit and rule that under its terms a conviction for criminal negligence may follow upon proof beyond a reasonable doubt that the proximate cause of the death of a human being was the operation or driving of a vehicle by the defendant under circumstances which show negligence on his part and in addition a reckless disregard of the consequences of such conduct and his indifference to the rights of others.

We are to apply that standard of guilt to the evidence upon which the defendant has been convicted.

The accident occurred on Lake road which leads from the hamlet of Sodus Point westerly toward the village of Sodus in Wayne county. The road is a surface-treated gravel structure with a normal paved width of eighteen feet which varies at points to the extent of six inches due to "raveled" or worn edges. As one approaches from the east toward the point where the accident occurred, about two miles west from the hamlet of Sodus Point, the grade of the road descends gradually to a point where there is a slight turn to the north. A short distance beyond or westerly from this turn and on either side of the road are the concrete abutments of a small highway culvert. The width of the clear way between these abutments, through which the highway runs, is twenty feet.

In the early morning hours of September 5, 1937, a car driven westerly by the defendant along the highway above described, struck the concrete abutment on the south side of the road causing the car to be deflected from the highway and to overturn. The People do not dispute the fact that the defendant sustained personal injuries which resulted in a complete loss of memory from an hour prior to the accident until several hours after it occurred. Of his four companions in the car, one was killed. Each of the three surviving passengers was called by the prosecution to describe the accident. The mother of the decedent, who was seated on the rear seat with her daughter and another passenger, testified that as the car proceeded westerly and approached the top of the grade just east of the culvert, the defendant " seemed to be driving all right * * * but he seemed to be driving too fast. I didn't feel comfortable." At another point she testified that except for her belief that he was going too fast, he kept on the right-hand side of the road and was " attending to his business." Her estimate of the speed of the car was " 60 or at least 65 miles an hour." She also testified: " I spoke to him [the defendant] as we were approaching this grade, as we came over the grade. * * * I told him he was driving too fast and asked him to please drive slower and that we were in no special hurry to get home." As bearing upon the essential element of criminal negligence which we have already considered, viz., reckless disregard by the accused of the consequences of his conduct and his indifference to the rights of others, it is important to note that when asked how the defendant drove after she spoke to him, this witness answered in substance that she had then become interested in other conversation in the car and had no recollection upon the subject.

The young woman who was seated on the front seat with the

defendant also estimated the speed of the car at sixty to sixty-five miles an hour as the car approached the site of the accident. She did not hear the decedent's mother speak to the defendant concerning the speed nor did she speak of it herself.

The only other witness to the accident called by the prosecution was the fourth passenger, a young man who was seated on the rear seat between the decedent and her mother. He estimated the speed of the car as it approached the site of the accident to have been fifty miles an hour and testified that he did not regard its speed as excessive at the time of the accident or prior thereto. We are also told by this witness that the car was on its right side of the highway as it descended the grade toward the culvert. As the defendant himself has no memory of the accident, he could give no testimony as to what occurred to cause the car to be deflected across the road to a point where it struck the southerly abutment. The record is silent upon that subject.

The defendant's conviction rests solely upon proof of speed — not speed maintained at an excessive rate over a distance of one-quarter of a mile or more (See Vehicle and Traffic Law, § 56, subd. 1, ¶ b, as amd. by Laws of 1931, chap. 518), but speed maintained along a stretch of highway of uncertain length of which the only measurement in the record is the testimony by the decedent's mother — " as we were approaching this grade, as we came over the grade."

A judgment of conviction for criminal negligence cannot be sustained upon proof of speed alone. (*People* v. *Grogan, supra,* p. 144; *People* v. *Pace,* 220 App. Div. 495; *People* v. *Waxman,* 232 id. 90; *People* v. *Angelo, supra,* p. 457.) Negligence there may have been, which might have led to civil liability. But " a distance separates the negligence which renders one criminally liable from that which establishes civil liability." (*People* v. *Rosenheimer,* 209 N. Y. 115, 123. Cf. *Brown* v. *Shyne,* 242 id. 176, 182, 183.)

The test is not satisfied by proof of excessive speed amounting to negligence but by proof of speed of that character — if such was the case — and other circumstances which, as we have seen, together must show a reckless disregard by the accused of the consequences of his conduct and his indifference to the rights of others.

As the record before us is barren of evidence which satisfies that additional requirement, the judgment of conviction should be reversed on the law and the facts and the indictment dismissed.

All concur. Present — SEARS, P. J., LEWIS, CUNNINGHAM, TAYLOR and DOWLING, JJ.

Judgment of conviction reversed on the law and the facts and indictment dismissed.